MILDRED B. LONG v. LUCY E. GILLIAM and MARGARET GILLIAM STROCK, T/A MILDRED'S SHOP.

(Filed 10 October, 1956.)

**1. Master and Servant § 2—**

The written contract in this case, purporting to reduce to writing the prior verbal contract of employment between the parties, without payment to the employee of the compensation due her up to the time of the execution of the writing and without providing in express terms either for cancellation or continuance of the employment, together with provision for the continuance of the use of the employee's given name as the trade name for the business, *is held* not a cancellation or termination of the pre-existing contract of employment or a contract fixing a new rate of pay for subsequent employment.

**2. Master and Servant § 6b—**

Where a contract of employment does not fix a definite term, it is terminable at the will of either party, but as long as it is not terminated by either party, the employee is entitled to compensation at the contract rate for the period worked.

**3. Master and Servant § 2b—**

A verbal contract of employment under which the employee's compensation was fixed at a stipulated sum per week, plus a yearly share of the net

profits, was reduced to writing which did not stipulate a fixed term of employment, and the employee continued to work in the same manner after the execution of the writing. *Held:* Under the allegations and evidence, whether the employee was to continue to receive a share of the profits in addition to the compensation to be paid weekly was a question of fact for the jury.

**4. Trial § 22b—**

Defendant's evidence in conflict with that offered by plaintiff is not to be considered in passing upon motion to nonsuit.

JOHNSON, J., not sitting.

APPEAL by defendants from *McKeithen, J.,* March Term 1956, MECK-LENBURG.

In January 1954, plaintiff, seeking to recover compensation asserted to be owing to her under a contract of employment, filed a complaint in which she alleged:

"3. That in January 1951 the defendants employed the plaintiff to work in said business known as Mildred's Shop as an operator thereof and saleswoman therein for which the defendants agreed to pay to the plaintiff as wages the sum of $25.00 per week, plus 40% of the net profits from the operation of said business; that on or about the 3rd day of May 1952 said contract of employment was reduced to writing by the parties hereto; and that a verbatim copy of said written contract is attached hereto and made a part of this paragraph of this complaint as if fully set forth herein, and is for the purpose of identification marked as EXHIBIT A.

"4. That pursuant to said agreement, the plaintiff entered into the employment of the defendants in said capacity and fully performed the duties assigned to her in an able, efficient, adequate, and proper manner until on or about the 29th day of December 1953, when the plaintiff was wrongfully and unlawfully discharged without cause, by the defendants."

She then alleged that she had received, on 3 May, 1952, the sum of $818.28 as her share of the profits for the year 1951; that no portion of the profits had been paid to her for the years 1952 and 1953. She alleged that she was, by the contract, entitled to continuous employment and that the discharge in December 1953 was unlawful and in breach of her contract rights. She asked for an accounting, that she recover her portion of the profits for the years 1952 and 1953 and such further relief as she might be entitled to.

Defendants for answer to sections 3 and 4 of the complaint say:

"3. Answering the allegations of paragraph 3 of the complaint, the defendants admit that in the month of January 1951 they employed the

plaintiff to work in their said business as saleswoman and agreed to pay her as wages the sum of $25.00 per week plus 40% of the net profits from the operation of said business, provided said percentage of the profits should be applied by the plaintiff toward her purchase of a one-third interest and share in said business; that said agreement was verbal and was not reduced to writing; that on or about the 3rd day of May 1952, said parties considered it advisable to have a written agreement setting forth the terms of the original verbal employment. Any other allegations embraced in said paragraph 3 are untrue and are denied.

"4. Answering the allegations of paragraph 4 of the complaint the defendants say that said plaintiff continued in their employ at the salary of thirty dollars per week; that they had no agreed time for said employment to continue; that in the month of December 1953, the defendants found that the services of the plaintiff were no longer satisfactory and they suspended her from her said employment; and that on January 12, 1954 for good and satisfactory reasons and cause they discharged her from their said employment. Any other allegations contained in said paragraph of the complaint are untrue and are denied."

Defendants deny that they are indebted to plaintiff in any sum.

In August 1955 plaintiff made a motion to amend her complaint so as to allege that plaintiff was, under the contract, entitled to continue as an employee of defendants for the years 1954 and 1955 and to receive 40% of the net profit for those years; that she had sought other employment to minimize her damage without success and was in this action entitled to recover 40% of the profits of defendants' business for the years 1954 and 1955. This motion was allowed, and an amended complaint was filed reiterating plaintiff's assertion that she was entitled to 40% of the profits for the time she worked for defendants and was also entitled to 40% of the profits for the years 1954 and 1955.

Defendants thereupon filed a motion to strike the amended complaint. The motion was allowed as to that portion of the complaint asserting a right to recover any portion of the profits after the discharge. The defendants thereupon answered the amended complaint and denied that they were indebted to plaintiff in any sum.

Exhibit A attached to the complaint follows:

"STATE OF NORTH CAROLINA
"COUNTY OF MECKLENBURG

"THIS AGREEMENT made and entered into this 3rd day of May 1952, by and between MRS. MILDRED B. LONG, party of the first part, and MRS. LUCY E. GILLIAM and MRS. MARGARET GILLIAM STROCK, parties of the second part all of the County and STATE aforesaid;

"WITNESSETH, WHEREAS, in January 1951, the parties of the second part purchased from Mrs. Betty Steiner of Tryon, North Carolina, a woman's wear shop located at 202 East Morehead Street, Charlotte, North Carolina, whereat, as of the time of such purchase, the party of the first part had been employed as operator and/or manager; and

"WHEREAS, at the time of the purchase of the aforementioned shop by the parties of the second part, certain understandings were had between the parties of the second part and the party of the first part concerning the continued employment and/or affiliation of the party of the first part with said woman's wear shop; and

"WHEREAS, it now seems desirable and appropriate to reduce to writing, for the purpose of the better understanding of the parties, the agreements heretofore reached between them;

"Now, THEREFORE, in consideration of the mutual acknowledgments and covenants and conditions hereinafter contained, it is hereby mutually AGREED between the parties hereto as follows:

"1. That from and after the date of the acquisition by the parties of the second part from Mrs. Betty Steiner of that certain woman's wear shop heretofore and presently located at 202 East Morehead Street, Charlotte, North Carolina, the party of the first part was employed by the parties of the second part as an operator or employee of the parties of the second part for the purpose of operating said shop, and that the party of the first part accepted such employment at a compensation payable by the parties of the second part at the rate of $25.00 per week, plus 40% of the net profits from the operation of said woman's wear shop.

"2. That the party of the first part acknowledges receipt in full to the date hereof the periodic salary payments to which she has become entitled by reason of the agreement specified above, and does further acknowledge receipt of the sum of $818.28 to her in hand paid, which said sum is accepted by her as payment in full of her share of the net profits from the operation of the shop for the year 1951.

"3. The party of the first part acknowledges that the agreement by the parties of the second part to pay to her, in addition to the above specified periodic salary amounts, 40% of the net profits of the operation of the business was at least in part in consideration of the good will accruing to the business on account of the personal service rendered by the party of the first part in connection with the operation of said business, and in consideration of the agreement of the party of the first part that said business should be operated and conducted under the name of 'Mildred's Shop,' 'Mildred' being the given name of the party of the first part. The party of the first part further grants unto the parties of the second part and their assigns, the full right and authority to continue to use the trade name 'Mildred's Shop' as long as they may

desire to do so, and also in the event that they may incorporate said business.

"4. The party of the first part acknowledges that at the time the parties of the second part acquired said business they offered to her the opportunity to acquire a proprietary interest in the same, and that she declined to accept said offer, and said party of the first part hereby acknowledges that by reason of her rejection of said offer made by the parties of the second part, she now has no right, demand or claim to becoming a partner or shareholder in the said business.

"IN TESTIMONY WHEREOF the parties hereto have hereunto set their hands and seals this the day and year first above written.

"MILDRED B. LONG    (SEAL)<br>
"LUCY E. GILLIAM    (SEAL)<br>
"MARGARET GILLIAM STROCK    (SEAL)"

The court, without objection, submitted these issues to the jury:

"1. Did plaintiff and defendants agree that plaintiff should be paid an amount of money equal to 40% of the net profits of Mildred's Shop for the period of time after 1951?

"Answer: Yes.

"2. If so, in what amount of money, if any, are defendants indebted to the plaintiff based on profits earned in 1952 and 1953?

"Answer: $3,749.15."

Judgment was rendered on the verdict and defendants appealed.

*Blakeney & Alexander and Ernest W. Machen, Jr., for plaintiff appellee.*

*G. T. Carswell, James F. Justice, and Samuel M. Millette for defendant appellants.*

RODMAN, J. The court's charge is not in the record. The only error assigned and relied on by the defendants is the refusal of the court to allow their motion of nonsuit. They now insist that the paper writing of 3 May, 1952, is not in fact a contract of employment but a release and cancellation of a pre-existing contract, and that the court should, as a matter of law, have so construed it and hence allowed their motion of nonsuit.

That the paper cannot on its face be declared a cancellation and termination of a pre-existing contract of employment or a contract fixing a new rate of pay for subsequent employment seems clear. It recites (1) that the parties had, sixteen months prior thereto, made an oral agreement; (2) that it was desirable to reduce the terms of the agreement to writing; (3) that defendants had purchased a mercantile

establishment of which plaintiff had been manager and which was operated under the given name of plaintiff; (4) that the rate of compensation to be paid plaintiff for services to be rendered had been fixed by agreement; (5) that the weekly salary in the amount of $25 had been paid to that date and payment had also been made of the agreed percentage of the profits for 1951; (6) that the agreement to pay a percentage of the profits was based in part on the right to use plaintiff's name "Mildred," and that defendants might continue to so use the name; (7) that plaintiff was originally given the right to become a partner in the business but had surrendered that right.

It is to be noted that the instrument does not in express terms provide for cancellation or continuance of plaintiff's employment. Being for an indefinite term, it could be terminated at the will of either party. *Howell v. Credit Corp.*, 238 N.C. 442, 78 S.E. 2d 146; *Malever v. Jewelry Co.*, 223 N.C. 148, 25 S.E. 2d 436; *May v. Power Co.*, 216 N.C. 439, 5 S.E. 2d 308; *Currier v. Lumber Co.*, 150 N.C. 694, 64 S.E. 763. But if the contract is not terminated by one of the parties, the employee is entitled to his compensation at the contract rate for the period worked.

There is at least indirect recognition in the instrument of 3 May, 1952, that the employment had not terminated. The instrument makes no pretense of paying plaintiff for her portion of profits earned to 3 May, 1952. It may suggest by permitting defendant to continue to use the name "Mildred's" that the relationship is to continue.

Since the contract does not terminate the relationship of employer and employee and since it is conceded that plaintiff continued to work for defendants from 3 May, 1952, to 29 December, 1953, what was the basis of her compensation? If the pleadings be given the liberal interpretation to which they are entitled, they suffice to allege that the employment continued with compensation to be paid during 1952 and 1953 as agreed upon in 1951 and as set out in the instrument of 3 May, 1952, namely, a fixed compensation of $25 per week plus 40% of the net profits.

Plaintiff testified without objection: "I worked in Mildred's Shop in 1951, '52, and '53. The Shop was owned by Mrs. Gilliam and her daughter, Mrs. Strock. They operate a partnership. The exhibit just introduced is the contract under which I was employed at Mildred's Shop."

Defendant, by cross-examination of plaintiff's witness, elicited this testimony: "I knew that a provision was in it (contract); that she gave her name for 40% of the net profits and her clientele. I don't know whether it was to go on for life but it was understood that it was to go on as long as help was in that shop. That was Mrs. Long's understanding, and she told me that this is what she understood."

The evidence for defendants tended to show that a settlement was had of all matters on 3 May, 1952, that the payment of $818.28 was a complete discharge of obligations of defendants to that date, and that thereupon a new contract of employment was entered into by which plaintiff was to receive $30.00 per week as compensation for the services to be rendered to defendants, and that she was not to receive any part of the net profits.

Defendants, in the brief filed here, point to the evidence of defendants in support of their motion to nonsuit. The motion to nonsuit must be tested by evidence favorable to plaintiff and without regard to conflicting evidence offered by defendants. *Rice v. Lumberton*, 235 N.C. 227, 69 S.E. 2d 543; *Williamson v. Clay*, 243 N.C. 337, 90 S.E. 2d 727.

The instrument dated 3 May, 1952, does not of itself determine the controversy. The question at issue was: Did plaintiff continue to work for defendants at the rate fixed in January 1951, or did she, after 3 May, 1952, work at a different rate agreed to by the parties? This was a question of fact for the jury. The motion for nonsuit was properly denied. There is

No error.

JOHNSON, J., not sitting.